UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JACOLBY WALLACE a/k/a JOCOLBY
WALLACE[1],

                    Plaintiff,

    v.                                            No. 13-CV-1208
                                                        (GTS/CFH)

C.O. FISHER, Watertown
Correctional Facility,

                    Defendant.[2]

---

**APPEARANCES:**                                  **OF COUNSEL:**

JACOLBY WALLACE
Plaintiff Pro Se
12-B-0802
Upstate Correctional Facility
Post Office Box 2001
Malone, New York 12953

HON. ERIC T. SCHNEIDERMAN                CATHY Y. SHEEHAN, ESQ.
Attorney General for the                        Assistant Attorney General
   State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F HUMMEL**
**U.S. MAGISTRATE JUDGE**

---

    [1] The website maintained by the New York State Department of Corrections and Community Supervision lists plaintiff's name as "Jacolby." See http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130. Plaintiff spells his first name as "Jocolby" in both his complaint and amended complaint. Dkt. Nos. 1, 10. The caption has been amended to reflect this alternate spelling; however, the plaintiff will continue to be referred to as "Jacolby" consistent with his listing on the DOCCS website.

    [2] By decision and order dated June 4, 2014, defendants Gayne, McArdle, and the New York State Department of Corrections were dismissed from this action. Dkt. No. 17.

**REPORT-RECOMMENDATION AND ORDER**[3]

Plaintiff pro se Jacolby Wallace ("Wallace"), an inmate currently in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant Fisher, a DOCCS employee, violated his rights under the First and Eighth Amendments. Compl. (Dkt. No. 1); Am. Compl (Dkt. No. 10). Presently pending is defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 23. Wallace did not respond. For the following reasons, it is recommended that defendant's motion be denied.

## I. Background

The facts herein are in the light most favorable to Wallace as the non-moving party. See subsection II(A) infra. At all relevant times, Wallace was an inmate at Watertown Correctional Facility ("Watertown").

On August 29, 2013, Wallace was released from the Special Housing Unit ("SHU").[4] Am. Compl. at 5. Upon returning to his cell, Wallace noticed that most of his hygiene products and all his food were missing from his locker. Id. Wallace filed an inmate claim sheet to obtain reimbursement for the items. Id. His claim was denied because the facility stated that Wallace's locker was not "secured before he left to go to work." Id. Wallace

---

[3] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[4] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

2

filed an appeal but was again denied. Id.

On September 10, 2013, while Wallace was in the law library preparing to file another appeal, various non-party corrections officers went to Wallace's dorm and searched his locker. Am. Compl. at 5. The officers found a picture Wallace had drawn that they felt was gang related. Id. As a result, the officers filed a Tier III misbehavior report against Wallace, which was later reduced to Tier II. Id. Wallace believed that the officers filed this ticket in retaliation for the claim he filed. Id. Wallace then gathered documents to file a 42 U.S.C. § 1983 claim. Id.

On September 13, 2013, Wallace was heading to the law library to receive assistance with filing the lawsuit. Am. Compl. at 5. On his way, defendant Correctional Officer Fisher ("Fisher") stopped and searched Wallace. Id. Fisher found the filing papers and asked "why do you have paperwork to the U.S. Marshal with a [correctional officer's] name on them?" Id. Wallace did not respond and Fisher said, "you better tell me what you are going to do with these papers or I am going to kno[ck] your teeth out." Id. Wallace was fearful and did not respond, thus, Fisher "made" Wallace place his hands in his pockets, grabbed him by the back of the neck, and escorted Wallace, along with three other correctional officers, to a dark draft room. Id. Fisher assaulted Wallace while the other correctional officers observed and did not intervene. Id. When Wallace returned to his dorm later that day, he realized his paperwork was never returned to him. Id. at 6. After this incident, several employees at Watertown attempted to deter Wallace from filing grievances against the correctional officers. Id. This action followed.

## II. Discussion[5]

Wallace contends that his Eighth Amendment rights were violated when Fisher used excessive force against him in an unprovoked assault. See generally Am. Compl. Wallace also claims that his First Amendment rights were violated when Fisher assaulted him in retaliation for preparing to file a lawsuit. Id. Fisher contends that Wallace has failed to state a claim. Dkt. No. 23-1 at 4.

### A. Legal Standard

Pursuant to the Federal Rules, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that

---

[5] By decision and order dated June 4, 2013 the court ordered: (1) plaintiff's initial IFP application be denied and his renewed IFP application granted; (2) plaintiff's claims against Gayne and McArdle dismissed without prejudice; (3) defendants Gayne and McArdle dismissed without prejudice; (4) plaintiff's claims against DOCCS dismissed with prejudice; (5) plaintiff's motion for a preliminary injunction denied as moot; and (6) plaintiff's excessive force and retaliation claims against Fisher survived sua sponte review and required a response. Dkt. No. 17. Accordingly, the only remaining causes of action are those alleged against Fisher.

4

is "plausible on its face." Iqbal, 556 U.S. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted). Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 680.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)). It follows that,

> the mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's paper in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those

5

> factual assertions are consistent with the allegations of the plaintiff's complaint.

Robles v. Bleau, No. 07-CV-0464, 2008 WL 4693153, at *6 & n.41 (N.D.N.Y. Oct. 22, 2008) (collecting cases).[6]

### B. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. Hudson v. McMillian, 503 U.S. 1, 9–10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses

---

[6] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9–10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Viewing the facts in the light most favorable to the plaintiff, Wallace has plausibly alleged an Eighth Amendment claim against Fisher. Wallace contends that Fisher was questioning him about the nature of his legal paperwork and when he did not respond, Fisher forcefully escorted Wallace to a draft room where he went on to physically assault Wallace. Taking Wallace's account of the events as true, and regardless of the seriousness of the injuries suffered, Fisher's use of force against Wallace was unprovoked and exercised solely to produce harm; thus, it was malicious. Blyden, 186 F.3d at 263; Hudson, 503 U.S. at 9–10. Fisher was alleged to have assaulted Wallace not to maintain

order and safety, but to inflict harm in retaliation for Wallace's actions filing a lawsuit. Wallace did not present any threat to Fisher, therefore there was no need for the application of force under this set of facts. As such, the alleged force is a malicious act and a per se violation of the Eighth Amendment. Blyden, 186 F.3d at 263. Therefore, Wallace has plausibly alleged that Fisher violated his Eighth Amendment constitutional rights.

Accordingly, defendant's motion on this ground should be denied.

### C. First Amendment

To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010). In the prison context, "adverse action" is objectively defined as conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). "[A]dverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008). . This objective test is applied even when the plaintiff is not subjectively deterred, in that he continues to file lawsuits or grievances. Gill, 389 F.3d at 381.

"Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good

8

discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." Barclay v. New York, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007) (citations omitted).

> There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases. However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

Courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration. Jackson, 549 F. Supp. 2d at 214–15. Therefore, conclusory allegations alone are insufficient. Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

Here, Wallace has plausibly alleged a First Amendment retaliation claim against Fisher. First, Wallace was in the process of filing a lawsuit pursuant to 42 U.S.C. § 1983 and; therefore, was engaged in constitutionally-protected conduct. Bounds v. Smith, 430 U.S. 817, 821 (1977) (holding that prisoners have a constitutional right of access to the courts). Second, Wallace alleged that Fisher assaulted him which is sufficient to satisfy the second prong of the analysis. See Smith v. Rosati, No. 10-CV-1502 (DNH/DEP), 2013 WL 1500422, at *14 (N.D.N.Y. Feb. 20, 2013) (holding that an assault by a correctional officer is sufficient adverse action for a First Amendment retaliation claim) (citation omitted); see also Rivera v. Goord, 119 F. Supp. 2d 327, 339–40 (S.D.N.Y. 2000). Finally, Wallace alleged a

9

causal connection between Fisher's assault and his lawsuit. After Fisher saw and questioned Wallace about his legal papers, Fisher threatened to use force against Wallace seemingly for bringing lawsuits against fellow corrections officers. Temporal proximity, and thus a causal connection, were pled because the alleged retaliatory conduct occurred immediately after Fisher learned of Wallace's intent to engage in constitutionally-protected conduct. Barclay, 477 F. Supp. 2d at 588. Therefore, Wallace has alleged a First Amendment retaliation claim against Fisher.

Accordingly, defendant's motion on this ground should be denied.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion to dismiss (Dkt. No. 23) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.D.N.Y.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATE:  September 16, 2014
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge