UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JACOLBY WALLACE, a/k/a Jocolby Wallace,

                Plaintiff,

v.

                                                      9:13-CV-1208
                                                      (GTS/CFH)

C.O. FISHER, Watertown Corr. Facility,

                Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

LEONARD & CURLEY, PLLC                 MARK C. CURLEY, ESQ.
  *Pro Bono* Trial Counsel for Plaintiff
205 W. Court Street
Rome, New York 13440

HON. ERIC T. SCHNEIDERMAN           CATHY Y. SHEEHAN, ESQ.
Attorney General for the State of New York     Assistant Attorney General
  Counsel for Defendant
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

On December 7, 2015, the Court conducted an evidentiary hearing in the above-captioned prisoner civil rights action, filed *pro se* by Jacolby Wallace, a/k/a Jocolby Wallace ("Plaintiff"), against the above-captioned New York State correctional employee ("Defendant"), pursuant to 42 U.S.C. § 1983, asserting claims of excessive force and retaliation.[1] The hearing

---

[1] Plaintiff asserted his claims against Defendant for the first time in his Verified Amended Complaint. (Dkt. No. 10 [Verified Am. Compl.].) Plaintiff's Verified Amended Complaint also contained claims against another corrections officer, the facility superintendent, and the New York State Department of Corrections and Community Supervision. (*Id*.) However, those claims were dismissed *sua sponte* on the Court's initial review of Plaintiff's Verified Amended Complaint. (Dkt. No. 17 [Decision and Order filed June 4, 2014].)

regarded Defendant's affirmative defense that Plaintiff failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act, before filing his Amended Complaint on October 29, 2013. (Dkt. No. 10.) At the hearing, documentary evidence was admitted, and testimony was taken of Plaintiff as well as Defendants' witnesses (i.e., Watertown Correctional Facility Inmate Grievance Program Coordinator Kathryn Gascon and Inmate Grievance Program Supervisor Sergeant Quinta), whom Plaintiff was able to cross-examine through *pro bono* trial counsel. At the conclusion of the hearing, the undersigned indicated that a written decision would follow. This is that written decision. For the reasons stated below, Plaintiff's Amended Complaint is dismissed because of his failure to exhaust his available administrative remedies before filing this action.

## I.     RELEVANT LEGAL STANDARD

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In this regard, exhaustion serves two major purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

In accordance with the PLRA, the New York State Department of Corrections and Community Supervision ("DOCCS") has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7 ("Directive 4040").[2] *See also* Hrg. Ex. D-3 (attaching copy of Directive 4040 in effect during the time in question in this action). First, an inmate must file a complaint with the facility's IGP clerk within twenty-one (21) calendar days of the alleged occurrence. If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen (16) calendar days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen (16) calender days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. Second, a grievant may appeal the IGRC decision to the facility's

---

 2   *See also Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. Mar. 31, 2010) [citation omitted].

superintendent within seven (7) calendar days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within twenty (20) calendar days of receipt of the grievant's appeal. Third, a grievant may appeal to the Central Office Review Committee ("CORC") within seven (7) calendar days of receipt of the superintendent's written decision. CORC is to render a written decision within thirty (30) days of receipt of the appeal.

Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor. The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review. Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar "special" procedure is provided for claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

It is important to note that these procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances. 7 N.Y.C.R.R. § 701.6(g). If that application was denied, the inmate could file a complaint complaining that the application was wrongfully

4

denied.³ Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next level, including CORC, to complete the grievance process.⁴

Despite the plain language of 7 N.Y.C.R.R. § 701.6(g), there appears to be some confusion regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number.⁵ After carefully reviewing the case law, the Court finds that the weight of authority (and the better-reasoned authority) answers this question in the affirmative.⁶ This point of law has been recognized by district courts in the Northern District of New York,⁷ Southern District of New

---

³ *See Murray,* 2010 WL 1235591, at *2 & n.3 (citing *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 [N.D.N.Y. filed Aug. 4, 2009], an appeal from which was subsequently dismissed as frivolous, *see Groves v. Knight*, No. 09-3641, Mandate [2d Cir. filed Jan. 15, 2010].)

⁴ 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Murray,* 2010 WL 1235591, at *2 & n.4 [collecting cases].

⁵ *Murray,* 2010 WL 1235591, at *2 & n.5 [citing cases].

⁶ *Cf. Hernandez v. Coffey*, 582 F.3d 303, 305, 309, n.3 (2d Cir. 2009) ("Our ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or justification for failure to exhaust [which included an argument that the Inmate Grievance Program was not available to him because, when he filed a grievance at the first stage of the Program, he received no response and his grievance was not assigned a grievance number].").

⁷ *See, e.g., Rosado v. Fessetto*, 09-CV-0067, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) (Baxter, M.J.) ("Courts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."), *adopted by* 2010 WL 3809991 (N.D.N.Y. Sept. 21, 2010) (Hurd, J.); *Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *15, 18 & n.46 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("[E]ven if Great Meadow C.F. did not . . . have a functioning grievance-recording process (thus, resulting in Plaintiff's alleged grievance never being responded to), Plaintiff still had the duty to appeal that non-response to the next level."), *accord*, *Midalgo v. Bass*, 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept. 26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance of April 26, 2003, which was never assigned a grievance number); *cf. Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA.").

York,[8] and Western District of New York.[9] The Court notes that, if the plaintiff attaches to his appeal a copy of his grievance (or even if he adequately describes, in his appeal to the superintendent, the substance of that grievance), there is something for the superintendent to review.[10]

---

[8] *See, e.g.,Walters v. Carpenter*, 02-CV-0664, 2004 WL 1403301, at *3 (S.D.N.Y. June 22, 2004); *Veloz v. New York*, 339 F. Supp. 2d 505, 515-16 (S.D.N.Y. 2004) (rejecting inmate's argument that prison's grievance procedure had been rendered unavailable by the practice of prison officials' losing or destroying his grievances, because, *inter alia*, he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"), *aff'd*, 178 F. App'x 39 (2d Cir. 2006); *Hernandez v. Coffey*, 99-CV-11615, 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003) (rejecting plaintiff's argument that he could not have exhausted because he never received a grievance number, finding he could nonetheless have appealed any such non-response to the next level); *cf. Wesley v. Hardy*, 05-CV-6492, 2006 WL 3898199, at *4 (S.D.N.Y. Dec. 12, 2006) ("If a prisoner submits a grievance and receives no response, he cannot be considered to have been actively obstructed or frustrated, as he is free to appeal to the next level of review."), *accord, Sims v. Blot*, 00-CV-2524, 2003 WL 21738766, at *3 (S.D.N.Y. July 25, 2003) ("[E]ven if no response is received by an inmate to his grievance within the allotted time period, he may then appeal that grievance (and the absence of a decision thereon) to the next step in the grievance process."); *Hemphill v. New York*, 198 F. Supp. 2d 546, 549 (S.D.N.Y. 2002) ("Had plaintiff utilized this procedure, any failure by Artuz to render a decision on his matter within twelve working days could have been appealed to Albany, thus completing the grievance cycle and exhausting his remedies in a matter of weeks."), *vacated and remanded on other grounds*, 380 F.3d 680 (2d Cir. 2004); *Martinez v. Willaims*, 186 F. Supp. 2d 353, 357 (S.D.N.Y. 2002) ("[P]laintiff now argues in his opposition brief that he filed a grievance in November 1999 and did not receive a response . . . . Plaintiff's argument that he is excused because defendants failed to act with respect to the grievance is unpersuasive. Plaintiff could have and should have appealed the grievance in accordance with grievance procedures."); *Waters v. Schneider*, 01-CV-5217, 2002 WL 727025, at *2 (S.D.N.Y. Apr. 23, 2002) ("Waters alleges that he attempted to file a grievance with the Inmate Grievance Resolution Committee . . . in April 2001 but never received a response. . . . In either case, it is undisputed that Waters did not pursue the available appeals within the prison grievance system.").

[9] *See, e.g., Collins v. Cunningham,* 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20, 2009) (rejecting plaintiff's argument that his administrative remedies were not available where his grievance of March 20, 2004, was not assigned a grievance number); *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *cf. Williams v. Hupkowicz*, 04-CV-0051, 2007 WL 1774876, at *4 (W.D.N.Y. June 18, 2007) ("Even assuming that an inmate received no timely official response as contemplated by the regulations to a grievance at any stage in the inmate grievance process, the inmate could nevertheless appeal such grievance to the next level, and the failure to do so constitutes a failure to exhaust his administrative remedies as required under the PLRA.").

[10] This point of law has been explicitly recognized in some cases. *See, e.g., Goodson v. Silver*, 09-CV-0494, 2012 WL 4449937, at *4 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J.); *accord, Murray*, 2010 WL 1235591, at *2. In addition, it has been implicitly recognized in other cases. *See, e,g, Murray*, 2008 WL 2522324, at *15, 18 & n.46 ("[E]ven if Great Meadow C.F. did not . . . have a functioning

6

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal. *Woodford*, 548 U.S. at 93; *Porter*, 534 U.S. at 524; *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). However, a plaintiff's failure to exhaust does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004); *accord*, *Ruggiero*, 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. [citations and internal quotations omitted].

---

grievance-recording process (thus, resulting in Plaintiff's alleged grievance never being responded to), Plaintiff still had the duty to appeal that non-response to the next level."); *Midalgo*, 2006 WL 2795332, at *7 (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance of April 26, 2003, which was never assigned a grievance number); *Hernandez*, 2003 WL 22241431, at *4 (rejecting plaintiff's argument that he could not have exhausted because he never received a grievance number, finding he could nonetheless have appealed any such non-response to the next level); *Collins*, 2009 WL 2163214, at *3, 6 (rejecting plaintiff's argument that his administrative remedies were not available where his grievance of March 20, 2004, was not assigned a grievance number).

7

Finally, two additional points bear mentioning regarding exhaustion hearings. First, the Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011). Second, given that non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to exhaust his available administrative remedies.[11] However, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter" the defendant's assertion by showing exhaustion, unavailability, estoppel, or "special circumstances."[12] As a result, practically speaking, while the burden on this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.[13]

## II. ANALYSIS

After carefully considering the evidence submitted at the hearing, the Court finds that, before filing this action, Plaintiff failed to follow each of the required three steps described above in Part I of this Decision and Order. The Court bases this finding on (1) the credible hearing testimony of Inmate Grievance Program Coordinator Kathryn Gascon, (2) the credible hearing testimony of Inmate Grievance Program Supervisor Sergeant Dion Quinta, and (3) the

---

[11] *Murray,* 2010 WL 1235591, at *4 [citation omitted].

[12] *Murray,* 2010 WL 1235591, at *4 & n.17 [citing cases].

[13] *Collins v. Caron,* 10-CV-1529, 2014 WL 296859, at *4 (N.D.N.Y. Jan. 27, 2014) (Suddaby, J.); *Smith v. Kelly*, 06-CV-0505, 2013 WL 6154366, at *4 (N.D.N.Y. Oct. 30, 2013) (Suddaby, J.); *Goodson v. Silver*, 09-CV-0494, 2012 WL 4449937, at *5 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J.).

8

hearing exhibits adduced by Defendant. (*See, e.g.,* Hrg. Tr.; Hrg. Exs. D-1, D-2, D-3, D-4, D-5, D-6, D-7.) However, as indicated above in Part I of this Decision and Order, this finding does not end the Court's inquiry; rather, the Court must proceed to the three-part inquiry established by the Second Circuit.

### A. Part One: Availability of Administrative Remedies

New York prison inmates are subject to an Inmate Grievance Program established by DOCCS and recognized as an "available" remedy for purposes of the PLRA. *Murray,* 2010 WL 1235591, at *5 [citations omitted]. There are different circumstances under which the grievance procedure is deemed not to have been available to an inmate plaintiff. *Id.* [citation omitted]. For example, courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Id.* [citation omitted]. When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available." *Id.* [citations omitted].

Here, after carefully considering the evidence submitted at the hearing, the Court finds that administrative remedies were "available" to Plaintiff during the time in question. The Court makes this finding for the following three reasons.

First, in his hearing testimony and Verified Amended Complaint, Plaintiff asserted that, during the time in question, there was a grievance procedure at Watertown Correctional Facility, he submitted a grievance, and he spoke to "the lady civilian grievance coordinator [who]

9

received my grievance" on September 16, 2013. (Hrg. Tr. at 2; Hrg. Ex. D-2, at ¶¶ 4[a],[b][i], 6.) Similarly, Plaintiff asserted that, during the time in question, he "filled out another grievance" at Gouverneur Correctional Facility. (Hrg. Tr. at 5; Hrg. Ex. D-2, at ¶ 6.)

Second, at the hearing, Inmate Grievance Program Coordinator Kathryn Gascon and Inmate Grievance Program Supervisor Sergeant Dion Quinta testified credibly that, during the time in question, there was a working grievance program at Watertown Correctional Facility. (Hrg. Tr. at 14-16, 20-24.) Similarly, the record contains a copy of a grievance Plaintiff filed at Gouverneur Correctional Facility, and a response to that grievance. (Hrg. Ex. D-7.)

Third, the Court finds Plaintiff's hearing testimony on the subject (i.e., that the alleged threats of Ms. Gascon essentially rendered the Inmate Grievance Program unavailable to Plaintiff, particularly in light of the asserted conduct of other corrections officers) to be incredible due to (a) the credibility of Sergeant Quinta's testimony that he has never seen Ms. Gascon threaten grievants, (b) the credibility of Ms. Gascon's testimony that she has never threatened grievants (and did not threaten Plaintiff), and (c) Plaintiff's demeanor during his testimony. (Hrg. Tr. at 9, 16-17, 26-27.)

The Court notes that, even if Plaintiff's administrative remedies were somehow rendered unavailable at Watertown Correctional Facility between the date of the alleged incident (September 13, 2013) and the date of his transfer to Gouverneur Correctional Facility (October 17, 2013), he has *not* persuaded the Court that those administrative remedies were rendered unavailable at Gouverneur Correctional Facility. This is because, pursuant to Directive 4040, Plaintiff had until 45 days from the incident on September 13, 2013 (or until October 28, 2013) in which to request an extension of the 21-day deadline for filing a grievance. (Hrg. Ex. D-3, at

9 [attaching § 701.6(g)(1)(i)(a)].) However, he did not file such a request at Gouverneur Correctional Facility between October 17, 2013, and October 23, 2013, despite the fact that had been informed of the grievance process numerous times upon his arrival at different correctional facilities. (Hrg. Exs. D-7, Ex. D-4; Hrg. Tr. at 4, 22-23.) Moreover, while he filed a (second) grievance at Gouverneur Correctional Facility on either October 24, 2013, or October 25, 2013,[14] he did not present mitigating circumstances to the IGP Supervisor at Gouverneur Correctional Facility for an extension of the 21-day deadline for filing a grievance, despite having had the opportunity to do so. (Hrg. Tr. at 5-6; Hrg. Ex. D-7.) Indeed, Plaintiff did not even avail himself of the administrative remedies at Gouverneur Correctional Facility, because he signed (and thus filed) his Verified Amended Complaint in this action (which asserted a claim against Defendant for the first time) on October 24, 2014–before he received a response to either his second grievance or any request for leave to file that grievance late.

**B.     Part Two: Estoppel**

After carefully considering the evidence submitted at the hearing, the Court finds that Defendant did not forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it. Defendant's Answer timely asserted this affirmative defense. (Dkt. No. 34, at ¶ 14.)

The Court also finds that Defendant is not estopped from raising the affirmative defense of non-exhaustion by taking actions that inhibited Plaintiff's exhaustion of remedies. In light of the various omissions in Plaintiff's hearing testimony and his demeanor during that testimony, the Court finds that he did not offer persuasive evidence that *Defendant* himself interfered with Plaintiff's ability to file grievances during the time in question.

---

[14]     Out of solicitude to Plaintiff, the Court assumes (based on Plaintiff's hearing testimony) that this second grievance was filed on one of the two above-listed dates, even though this second grievance appears to be stamped as having been received on "Oct. 28, 2013." (Hrg. Ex. D-7.)

It is important to note that a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of *other* individuals. This point of law is clear from Second Circuit cases.[15] Furthermore, this point of law has been relied on by district courts in the Northern District of New York,[16] Southern District of New York,[17] Eastern District of New York,[18] and Western District of New York.[19]

---

[15] *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) ("The second part considers whether defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether defendants' *own* actions inhibiting the inmate's exhaustion of remedies estops one or more of the defendants from raising the exhaustion defense.") (emphasis added); *Ruggiero v. Cnty. of Orange,* 467 F.3d 170, 178 (2d Cir. 2006) ("In our prior cases recognizing that *defendants' actions* may estop them from raising non-exhaustion as a defense . . . . Ruggiero does not allege beatings or threats of retaliation for filing a grievance or that he made any attempt to file a grievance and was denied that opportunity *by Defendants-Appellants*.") (emphasis added); *Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004) (explaining that, where several defendants played different roles in the acts giving rise to estoppel, "it is possible that some individual defendants may be estopped, *while other may not be*") (emphasis added).

[16] *See, e.g., Belile v. Griffin*, 11-CV-0092, 2013 WL 1776086, at *9 (N.D.N.Y. Feb. 12, 2013) (Peebles, M.J.), *adopted by* 2013 WL 1291720 (N.D.N.Y. Mar. 27, 2013) (McAvoy, J.); *Bailey v. Fortier,* 09-CV-0742, 2013 WL 310306, at *2 (N.D.N.Y. Jan. 25, 2013) (Sharpe, C.J.); *Thompson v. Bellevue Hosp.*, 09-CV-1038, 2011 WL 4369132, at *12 (N.D.N.Y. Aug. 29, 2011) (Lowe, M.J.), *adopted by* 2011 WL 4369132 (N.D.N.Y. Aug. 29, 2011) (Mordue, C.J.); *Calloway v. Grimshaw*, 09-CV-1354, 2011 WL 4345299, at *4 (N.D.N.Y. Aug. 10, 2011) (Lowe, M.J.), *adopted by* 2011 WL 4345296 (N.D.N.Y. Sept.15, 2011) (McAvoy, J.); *Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *5 & n.26 (N.D.N.Y. Mar. 31, 2010) (Suddaby, J.); *Snyder v. Whittier,* 05-CV-1284, 2009 WL 691940, at *9 (N.D.N.Y. Mar. 12, 2009) (Report-Recommendation of Peebles, M.J., adopted by McAvoy, J.); *Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Report-Recommendation of Lowe, M.J., adopted by Hurd, J.); *McCloud v. Tureglio*, 07-CV-0650, 2008 WL 1772305, at *12 (N.D.N.Y. Apr. 15, 2008) (Report-Recommendation of Lowe, M.J., adopted by Mordue, C.J.); *Shaheen v. McIntyre*, 05-CV-0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov. 5, 2007) (Report-Recommendation of Lowe, M.J., adopted by McAvoy, J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742378, at *12 (N.D.N.Y. June 22, 2006) (Report-Recommendation by Lowe, M.J., adopted by McAvoy, J.); *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr. 24, 2006) (Report-Recommendation of Lowe, M.J., adopted by Hurd, J.).

[17] *See, e.g., Collins v. Goord*, 438 F. Supp. 2d 399, 415, n.16 (S.D.N.Y. 2006).

[18] *See, e.g., McCullough v. Burroughs*, 04-CV-3216, 2005 WL 3164248, at *4 (E.D.N.Y. Nov. 29, 2005).

[19] *See, e.g., Barad v. Comstock*, 03-CV-0736, 2005 WL 1579794, at *6 (W.D.N.Y. June 30, 2005).

A contrary interpretation of the second part of the Second Circuit's three-part exhaustion inquiry would turn the ancient doctrine of estoppel on its head, transforming it–in Orwellian fashion–into one of "vicarious estoppel." *See Black's Law Dictionary* at 629 (9th ed) (defining "estoppel" as "[a] bar that prevents one from asserting a claim or right that contradicts what one has said or done before . . . ."). Moreover, such an invention would be wholly unnecessary: the vicarious conduct sought to be protected against is already protected against by the "special circumstances" inquiry established by the Second Circuit.

Finally, while it may be argued that such an interpretation of the doctrine of estoppel may nonetheless be appropriate because the purpose of the PLRA is to enable the institution to resolve disputes efficiently rather than protect the individual, prisoner civil rights suits are suits against prison officials in their individual capacities rather than suits against them in their official capacities (which would effectively be suits against the State and thus be barred by the Eleventh Amendment). As a result, the crux of the second part of the Second Circuit's three-part exhaustion inquiry is whether the officials may avail themselves of that defense, not whether the institution may avail itself of the defense.

For all these reasons, to the extent that Plaintiff alleges that the conduct of a non-defendant correctional employee (such as Inmate Grievance Program Coordinator Kathryn Gascon) inhibited him from exhausting his administrative remedies with regard to his grievance against Defendant, those allegations cannot estop *Defendant* from asserting failure-to-exhaust as a defense.[20]

---

[20] The Court notes that, while Plaintiff asserts that, after the alleged assault, Defendant told Plaintiff that he was going to come and search Plaintiff's cube and find a weapon, Plaintiff does not assert that this veiled threat of the planting of a weapon was caused in any way by the prospect of Plaintiff's filing a grievance against Defendant. (Hrg. Ex. D-2, at ¶ 6.) In any event, Plaintiff did not testify that such a veiled threat played any role in his failure to exhaust. (Hrg. Tr.)

13

## C. Part Three: Special Circumstances

There are a variety of special circumstances that may excuse a prisoner's failure to exhaust his available administrative remedies, such as the following: (1) the facility's "refusal to accept or forward plaintiff's appeals [to CORC]–which effectively rendered the grievance appeal process unavailable to him";[21] (2) non-defendants' "threats [to the plaintiff] of physical retaliation and reasonable misinterpretation of the statutory requirements of the appeals process";[22] and (3) when the plaintiff tries "to exhaust prison grievance procedures[, and] although each of his efforts, alone, may not have fully complied, together his efforts sufficiently informed prison officials of his grievance and led to a thorough investigation of the grievance."[23]

Construed with the utmost of special leniency, Plaintiff's Verified Amended Complaint, pre-hearing Exhibit List, hearing argument and cross-examination of Defendant's witnesses raise the specter of four excuses for Plaintiff's failure to exhaust his available administrative remedies before filing this action: (1) on September 16, 2013, Inmate Grievance Program Coordinator Kathryn Gascon deterred Plaintiff from filing his grievance by telling him that "things would only get worse" if he pursued his grievance, because all the staff members at Watertown Correctional Facility "work together" (a cooperation confirmed by, *inter alia*, the fact that Defendant had been motivated by Plaintiff's attempt to sue *another* corrections officer); (2) after he was transferred from Watertown Correctional Facility to Gouverneur Correctional Facility on

---

[21] *Sandlin v. Poole*, 575 F. Supp. 2d 484, 488 (W.D.N.Y. 2008) (noting that "[s]uch facts support a finding that defendants are estopped from relying on the exhaustion defense, as well as 'special circumstances' excusing plaintiff's failure to exhaust").

[22] *Clarke v. Thornton*, 515 F. Supp. 2d 435, 439 (S.D.N.Y. 2007) (noting also that "[a] correctional facility's failure to make forms or administrative opinions 'available' to the prisoner does not relieve the inmate from this burden").

[23] *Murray,* 2010 WL 1235591, at *5 [citation omitted].

or about October 17, 2013, Plaintiff sufficiently grieved, or attempted to grieve, the claims in question; (3) on September 13, 2013, Plaintiff complained orally to Corrections Officer J. Largett about Defendant's conduct; and (4) at some point in time, Plaintiff's mother placed a telephone call to the Inspector General's Office.

After carefully considering the issue, the Court finds that there exists no "special circumstances" justifying Plaintiff's failure to comply with the administrative procedural requirements. With regard to Plaintiff's first excuse (i.e., that Ms. Gascon threatened him not to file his grievance), the Court finds that this excuse does not constitute special circumstances justifying his failure to exhaust his available administrative remedies for each of two alternative reasons. As an initial matter, as indicated above in Part II.B. of this Decision and Order, the Court finds that the threat simply did not occur based on (a) Plaintiff's demeanor during his testimony, (b) the credibility of Ms. Gascon's testimony that she has never threatened grievants (and did not threaten Plaintiff), and (c) the credibility of Sergeant Quinta's testimony that he has never seen Ms. Gascon threaten grievants. Any argument that Ms. Gascon improperly refused to immediately forward Plaintiff's grievance to the superintendent is belied by the fact that, when it was received by her, the grievance was already signed by Plaintiff as having been "informally resolved." (Hrg. Tr. at 3, 25; Hrg. Ex. D-6.) In any event, even if Plaintiff's administrative remedies were rendered unavailable by Ms. Gascon at Watertown Correctional Facility between the date of the alleged incident (September 13, 2013) and the date of his transfer to Gouverneur Correctional Facility (October 17, 2013), those administrative remedies were *not* rendered unavailable at Gouverneur Correctional Facility between October 17, 2013, and the deadline for an extension request (on October 28, 2013), for the reasons set forth above in Part II.A. of this

15

Decision and Order.[24]  The Court finds that Ms. Gascon's asserted statement–even when combined with the other asserted conduct by corrections officers at Watertown Correctional Facility–would not have deterred a similarly situated inmate of ordinary firmness from filing a properly supported extension request at Gouverneur Correctional Facility (i.e., one presenting mitigating circumstances) between October 17, 2013, and October 28, 2013.[25]

With regard to Plaintiff's second excuse (i.e., that he sufficiently grieved, or attempted to grieve, the claims in question after he was transferred to Gouverneur Correctional Facility), the Court finds that this excuse does not constitute special circumstances justifying his failure to exhaust his available administrative remedies for the second reason stated in the preceding paragraph: Plaintiff could have, between October 17, 2013, and October 28, 2013, filed a properly supported request for an extension of the 21-day deadline for filing his grievance, but unjustifiably failed to do so.  Rather, he waited until three days or four days before the expiration of the 45-day time period under § 701.6(g)(1)(i)(a) to file a one-page grievance stating merely, *inter alia*, that Ms. Gascon placed him in "fear" *at Watertown Correctional Facility*, which was

---

[24] The Court notes also that, even if Plaintiff's account of Ms. Gascon's statement(s) were credited, her asserted obstructive conduct was akin to a refusal to process his grievance, which arguably could have been appealed to the next step in the administrative process (instead of being replaced by the filing another grievance at Gouverneur Correctional Facility). *See Collins v. Caron,* 10-CV-1527, 2014 WL 296859, at *3 (N.D.N.Y. Jan. 27, 2014) (Suddaby, J.) ("In light of the plain language of 7 N.Y.C.R.R. § 701.6(g)(2), the Second Circuit has indicated that the IGRC's nonresponse must be appealed to the superintendent even where the plaintiff's grievance was never assigned a grievance number.").

[25] "The inquiry with respect to special circumstances is the same as that for unavailability–namely, 'whether a similarly situated individual of ordinary firmness would have been deterred from following regular procedures.'" *Smith v. City of New York*, 12-CV-3303, 2013 WL 5434144, at *8 (S.D.N.Y. Sept. 26, 2013) (quoting *Hemphill*, 380 F.3d at 690).  *See also, supra,* Part I of this Decision and Order.

appropriately rejected as being untimely. (Hrg. Ex. D-7.)[26] In short, he did not, in fact, sufficiently grieve, or attempt to grieve, the claims in question, while at Gouverneur Correctional Facility.

With regard to Plaintiff's third excuse (i.e., that he submitted the complaints in question orally to another corrections officer, C.O. Largett), the Court finds that this excuse does not constitute special circumstances justifying his failure to exhaust his available administrative remedies for each of two alternative reasons. As an initial matter, an oral complaint to a corrections officer is not a grievance. (Hrg. Ex. D-3 at 1 [attaching § 701.2(a)].) *See also Martin v. City of New York*, 11-CV-0600, 2012 WL 1392648, at *6 (S.D.N.Y. Apr. 20, 2012) ("'[O]ral statements to various officials' do not satisfy the PLRA's exhaustion requirement.") (quoting *Simon v. Campos*, 09-CV-6231, 2010 WL 1946871, at *6 [S.D.N.Y. May 10, 2010]). During the time in question, Plaintiff knew, or reasonably should have known of that fact, given that usually prisoners are advised of the grievance procedure as part of their orientation at every new facility to which they are transferred. (Hrg. Tr. at 23; Hrg. Ex. D-4.) Indeed, he should have been placed on further notice of that fact due to C.O. Largett's having advised Plaintiff that he should "write a grievance." (Hrg. Ex. D-2, at ¶ 6.) In any event, following the making of that

---

[26] The Court notes that the denial of a prisoner's request to file a grievance beyond the 21-day deadline does not, of course, render a prisoner's administrative remedies exhausted with regard to that grievance. *See Woodford v. Ngo*, 548 U.S. 81, 95 (2006) (reversing Ninth Circuit decision holding that prisoner had exhausted his administrative remedies under the PLRA because none remained available to him after his grievance was rejected as untimely by state prison officials); *Smith v. Kelly*, 06-CV-0505, 2013 WL 6154366, at *10 (N.D.N.Y. Oct. 30, 2013) (Suddaby, J.) ("It would eviscerate the exhaustion requirement to deem an inmate to have exhausted his available administrative remedies where he files a grievance four-and-a-half years late . . . , then skips the superintendent and appeals the rejection of his grievance (based on untimeliness) to CORC, which never passes on the merits of his grievance. If exhaustion were permissible under such circumstances, every inmate could exhaust his available administrative remedies without fulfilling the functions of the exhaustion requirement . . . ."), *accord, Collins v. Caron,* 10-CV-1529, 2014 WL 296859, at *8 (N.D.N.Y. Jan. 27, 2014) (Suddaby, J.).

alleged complaint, Plaintiff never filed a timely appeal to CORC from either a non-response to that complaint or a finding of unsubstantiation regarding that complaint. (*Id*.; Hrg. Tr.)

With regard to Plaintiff's fourth excuse (i.e., that his mother called the Inspector General's Office), the Court finds that this excuse does not constitute special circumstances justifying his failure to exhaust his available administrative remedies for each of two alternative reasons. As an initial matter, even assuming that the Inspector General's Office carried out an investigation, the record does not establish that such an investigation was upon a *referral* from the Superintendent of either Watertown Correctional Facility or Gouverneur Correctional Facility, as is required. (*See generally* Hrg. Tr.; Hrg. Ex. D-2.) *See also, supra,* Part I of this Decision and Order. In any event, Plaintiff never appealed a finding of unsubstantiation by the Inspector General's Office to CORC (but rather proceeded directly to this Court). (*Id.*) Both a referral and appeal are required in order for an inmate's contact with the Inspector General's Office, and finding of unsubstantiation, to complete the exhaustion process.[27] Neither of those steps was taken here.

In sum, Plaintiff has proffered no special circumstances justifying his failure to achieve exhaustion of the claims in this action–whether those circumstances are considered individually or in combination. To hold otherwise, in this case, would be to unacceptably frustrate the two major purposes of the exhaustion requirement–to protect the administrative authority of DOCCS (by giving that department an opportunity to correct its own mistakes before being haled into

---

[27] *Goodson v. Silver*, 09-CV-0494, 2012 WL 4449937, at *4, 9 & n.17 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J.) (collecting cases); *accord*, *Collins v. Caron,* 10-CV-1529, 2014 WL 296859, at *8 (N.D.N.Y. Jan. 27, 2014) (Suddaby, J.); *Dabney v. Pegano*, 10-CV-1109, 2013 WL 5464776, at *11-12 (N.D.N.Y. Sept. 30, 2013) (Report-Recommendation of Dancks, M.J., adopted by Suddaby, J.); *Smith v. Kelly*, 06-CV-0505, 2013 WL 6154366, at *5, n.16 (N.D.N.Y. Oct. 30, 2013) (Suddaby, J.) (collecting cases).

federal court), and to promote judicial efficiency (by resolving disputes more quickly and economically in administrative proceedings, and producing a useful record for subsequent judicial consideration). *See, supra,* Part I of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's Verified Amended Complaint (Dkt. No. 10) is **<u>DISMISSED</u> in its entirety** for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close this action.

Dated: December 18, 2015
       Syracuse, New York

                                          Hon. Glenn T. Suddaby
                                          Chief U.S. District Judge